IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO.:

HAYES MEDICAL STAFFING, LLC,
a Florida Limited Liability Company,

Plaintiff,

v.

AMY EICHELBERG, an individual,
ALLISON PATIERNO, an individual,
SCOTT SIMON, an individual, and
JOBOT, LLC, a California Limited
Liability Company,

Defendants.                                    /

## VERIFIED COMPLAINT

Plaintiff, Hayes Medical Staffing, LLC ("Hayes"), by and through the undersigned counsel, hereby files this Verified Complaint against Defendants, Amy Eichelberg ("Eichelberg"), Allison Patierno ("Patierno"), Scott Simon ("Simon") (Eichelberg, Patierno, and Simon collectively, the "Individual Defendants"), and Jobot, LLC ("Jobot") (collectively, "Defendants") for temporary and permanent injunctive relief and damages based on breach of contract, misappropriation of trade secrets, violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, violations of the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 *et seq*., conversion, violations of the Florida Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801, *et seq*. and tortious interference with contractual relations and in support thereof states as follows:

CASE NO.: _____

## JURISDICTION AND VENUE

1.     Hayes is a Florida limited liability company and, at all times material, was registered and doing business in Broward County, Florida.

2.     Defendant Jobot is a California limited liability company, and at all times material, was registered and doing business in the State of Florida, engaged in substantial activity within Florida, and continues to do so.

3.     Upon information and belief, Defendant Eichelberg is, and at all times material hereto was, an individual residing in Palm Beach County, Florida.

4.     Upon information and belief, Defendant Patierno is, and at all times material hereto was, an individual residing in Broward County, Florida.

5.     Upon information and belief, Defendant Simon is, and at all times material hereto was, an individual residing in Broward County, Florida.

6.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action raises claims under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836(c). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same operative facts as its federal claims.

7.     Personal jurisdiction is proper in Florida because Defendants Eichelberg, Patierno, and Simon are citizens of and reside in Florida and, at all times material hereto, Jobot operated, conducted, engaged in and carried on a business or business venture in the State of Florida. Moreover, personal jurisdiction is proper over all Defendants because the Individual Defendants breached their contracts in Broward County, Florida, and Jobot and Patierno tortiously interfered with those contracts in Broward County, Florida.

CASE NO.: _____

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the Individual Defendants reside in this district and the events or omissions giving rise to the claims against all Defendants occurred and continue to occur in this district.

9.      All conditions precedent to bringing this action have occurred, have been satisfied, or have otherwise been waived.

**BACKGROUND FACTS**
**Hayes' Business**

10.      Hayes is a locum tenens staffing and recruiting agency in the business of national recruiting, staffing and placing of physicians and healthcare-related personnel (nurses and allied healthcare professionals of all specialties) with healthcare related businesses (*e.g.*, hospitals, clinics, medical practices, healthcare institutions) on a permanent and/or temporary basis, nationwide.

11.      The healthcare-staffing industry is a highly competitive industry with hundreds of major participants nationwide, all of which compete with Hayes in some or all aspects of their business.

12.      Hayes recruits healthcare professionals, assembles talent into a database, then draws from this recruited talent to fill open positions at client healthcare facilities. Then, when a staffing need arises at a healthcare facility, the facility will notify Hayes and competitor staffing companies of the particular need it may have, be it for a physician, nurse, or other healthcare professional.

13.      Upon receipt of a notice from a healthcare facility of a particular staffing need, Hayes and its competitor staffing companies seek to recruit an appropriate candidate for the position from their databases of qualified professionals or through the development of new relationships with interested professionals.

14.     Hayes and its competitors will then present qualified candidates to the requesting facility and will compete with other staffing companies to persuade the facility to accept the candidate that it is presenting rather than candidates presented by its competitors. A staffing company is generally only compensated by a facility upon a decision to accept a candidate presented to it by that staffing company.

15.     The value Hayes provides to its healthcare and provider clients depends on its network of relationships and its goodwill.  Hayes' reputation, course of dealing, and history with facilities can lead to a level of trust and confidence in Hayes, which renders a facility more likely to hire a candidate presented to it. This goodwill is developed not only through assurance that only highly qualified and skilled professionals are presented for consideration, but also based upon the relationships developed over the course of time between facilities and Hayes personnel with whom they interact on a regular basis.

16.     Hayes' goodwill with healthcare professionals/providers is just as important and valuable. The professionals – whether doctors, nurses or otherwise – often have many choices of staffing agencies through whom they may seek work opportunities.

17.     It is important that the professionals develop a level of trust and confidence in Hayes through their interactions with Hayes' personnel so that they know they will not be contacted for positions in geographic locations which are unacceptable, for positions for which they are not qualified or outside their expertise, or for positions where the compensation is simply not adequate.

18.     Because several candidates may be presented for any particular open position by any number of staffing agencies, it is common that a professional may not be selected for the first position for which they are presented. Hayes will, however, retain that candidate's information

and maintain a relationship with those professionals in the event another, perhaps more suitable opportunity arises in the future. It is important to Hayes that its employees maintain positive, long-term relationships with the professionals and that the professionals remain affiliated with and willing to consider positions proposed by Hayes.

19.     Eichelberg, Patierno, and Simon, all former employees of Hayes, had frequent contact with both the healthcare facility clients and the healthcare professionals with whom Hayes has developed relationships, some of whom had been placed before in temporary staffing positions. Among other duties, these Individual Defendants were responsible for maintaining Hayes' relationships with professionals and facility clients and ensuring that Hayes has a substantial database of interested and willing professionals from which to recruit upon notification of an employment opportunity by one of the facilities with which Hayes contracts.

20.     Hayes has expended substantial amounts of time, money, and effort to develop its employees, as well as its trade secrets and/or valuable confidential business information provided to its employees, to enable them to perform their jobs.  This includes compiled, detailed information regarding its healthcare professional and facility clients developed over time with input from numerous different employees.  Hayes derives independent economic value from this information not being generally known or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

**Eichelberg's Employment with Hayes**

21.     In 2020, Eichelberg began working as a Consultant at Hayes and later was promoted to Senior Consultant (senior recruiter).

22.     As a Senior Consultant, Eichelberg was responsible for making placements both on the provider side and facility side of the business, and she had direct and frequent contact with

CASE NO.: _____

Hayes' physicians and healthcare facility clients in all aspects of recruiting, staffing, credentialing, licensing and hiring.

23.    Eichelberg was responsible for, among other duties, maintaining Hayes' relationships with physicians and healthcare facility clients and assuring that Hayes has a substantial database of interested and willing physicians from which to recruit upon notification of an employment opportunity by one of the facilities with which Hayes contracts.

24.    Throughout Eichelberg's employment, Hayes expended substantial amounts of time, money and effort to develop and train Eichelberg.

25.    Throughout her employment, Eichelberg was educated and trained by Hayes on the ways in which it conducts recruiting and staffing services for locum tenens (the Latin phrase used in this industry to describe temporary physician placement), as well as permanent placements.

26.    Eichelberg gained knowledge of trade secrets and other confidential and proprietary information of Hayes, including, but not limited to, information relating to current, former and prospective clients; strategies for competitive credentialing of physicians; methods and types of recruitment and placement services preferred by Hayes' clients; sales and marketing techniques; strategic training and coaching methods for employees; and financial information relating to the business of Hayes.

27.    By virtue of her employment with Hayes Locums, Eichelberg was provided the education and training to perform her role and granted access to Hayes Locums' trade secrets and confidential and proprietary information, including *client lists*, physician contact information, spreadsheets updated by numerous employees noting client and physician preferences, business strategies and models, pricing information, market research and analysis, and cost control strategies.  Eichelberg utilized the training, knowledge, and skills she received from Hayes, as well

as her access to Hayes' confidential and proprietary information, to cultivate, develop and maintain relationships with Hayes' clients and physicians.

28.     Eichelberg voluntarily resigned from her employment on March 1, 2023.  On that date, Hayes provided Eichelberg with a separation letter reminding her of her agreement not to compete and to "immediately return all Company documents and property in [her] possession or control to the Company.  This includes . . . physician and client lists . . ." *See* Exhibit "A."

<u>**Eichelberg's Confidentiality, Non-Competition and No-Solicitation
Agreement with Hayes**</u>

29.     As an express condition of her employment with Hayes, Eichelberg entered into an Employment Agreement Including Confidentiality, Non-Competition and Non-Solicitation Provisions with Hayes on May 7, 2020 (the "Eichelberg Agreement"). A true and correct copy of the Eichelberg Agreement is attached as Exhibit "B."

30.     The Eichelberg Agreement contains, *inter alia*, the following provisions which describe Eichelberg's obligations to protect Hayes' confidential and proprietary business and trade secret information ("Confidential Business Information"), including client lists she compiled, supplemented, maintained and used, both during and after her employment with Hayes:

<u>**Non-Disclosure of Confidential Business Information**</u>

(a)     . . . Employee shall not, directly or indirectly, use, permit use of, disclose, discuss, publish or disseminate in any manner any Confidential Business Information of [Hayes], except as necessary in the performance of Employee's job duties and for the sole benefit of [Hayes].  Employee will not remove any hard or electronic copies (including via email to personal email or cloud service) of Confidential Business Information from [Hayes'] premises or systems without permission and will not print hard copies of any Confidential Business Information that the Employee accesses electronically from a remote location.

(b)     All Confidential Business Information shall be [Hayes'] sole property during and after Employee's employment.  Employee agrees to take all steps necessary, and all steps requested by [Hayes] to ensure that the Confidential Business Information is kept confidential and to comply

CASE NO.: _____

with all applicable policies and procedures of [Hayes] regarding the use, disclosure, maintenance and security of the Confidential Business Information.

(c)      Upon the termination of Employee's employment with [Hayes], regardless of the manner or reason), Employee shall immediately return to [Hayes] all Confidential Business Information, Employer assets, and other information and property obtained from or relating to [Hayes] or to which Employee had access, in good condition (normal wear and tear excepted) and shall not retain any copies thereof, whether in had copy or electronic form.

*See* Exh. "B," ¶ 8.1.

31.      Eichelberg also agreed to post employment obligations prohibiting her from competing with Hayes for twelve (12) months after her employment ended:

**Non-Competition Covenant**.

(a)      Because of [Hayes'] legitimate business interests as described in this Agreement and the good and valuable consideration offered to the Employee, Employee agrees that, during her employment and for a period of twelve (12) months immediately following the termination of Employee's Employment with [Hayes], regardless of the reason for Employee's termination, Employee will not, directly or indirectly (in any capacity, on Employee's behalf or on behalf of any other person or entity):

(i)      Be employed by or serve as an officer, director, partner, shareholder, member, owner, employer, employee, consultant, agent, independent contractor . . .  either directly or through a third party or employer, for a "Competitive Business" (as defined below) or any other person or business with which [Hayes] has performed services during the last twelve (12) months of Employee's employment with [Hayes].

*Id.*, ¶ 8.2.

32.      The Eichelberg Agreement defines a "Competitive Business" as any business entity, unincorporated organization or personally-operated venture (as well as any parent, subsidiary, successor, or affiliate of any such of such entities) located within the United States that engages in temporary (including "locum tenens") or permanent staffing of physicians or advanced practice

practitioners, or any other type of staffing services engaged in by [Hayes] during the Employee's employment with the  Employer.

33.     Eichelberg further agreed that for a period of twenty-four (24) months following her last date of employment with Hayes, she would not "directly or indirectly, induce, encourage, solicit or cause or attempt to induce, encourage, solicit or cause Physicians or Clients to cease doing business with or otherwise change or diminish the Physicians' or Clients' business with [Hayes].   *Id.*, ¶ 8.3 (**Non-Solicitation of Physicians or Clients**).   Not only did Eichelberg agree not to solicit Hayes facility and physician clients for a period of twenty-four (24) months, she also agreed not to "hire, attempt to hire, solicit, divert, induce or otherwise cause, attempt to cause or encourage employees or agents of [Hayes] to leave [Hayes'] employ for any reason" during the twenty-four (24) month non-solicit period.   *Id.*, ¶ 8.4 (**Non-Solicitation of Employees**).

34.     The restraints on disclosure, competition and solicitation specified in the Eichelberg Agreement are reasonably necessary to protect the legitimate business interests of Hayes.

35.      Specifically, Hayes' legitimate business interests include, but are not limited to, its: (1) trade secrets; (2) valuable confidential business or professional information; (3) substantial relationships with specific existing clients and healthcare professionals; (4) client and healthcare professional goodwill within Hayes' specific geographic market area; and (5) the investment in education and training of an employee.

## Patierno's Employment with Hayes

36.     In 2015, Patierno began working as a Consultant at Hayes and later was promoted to Senior Consultant.

CASE NO.: _____

37.     As a Senior Consultant, Patierno had direct and frequent contact with Hayes' physicians and healthcare facility clients in all aspects of recruiting, staffing, credentialing, licensing and hiring.

38.     Patierno was responsible for, among other duties, maintaining Hayes' relationships with physicians and healthcare facility clients and assuring that Hayes has a substantial database of interested and willing physicians from which to recruit upon notification of an employment opportunity by one of the facilities with which Hayes contracts.

39.     Throughout Patierno's employment, Hayes expended substantial amounts of time, money and effort to develop and train Patierno.

40.     Throughout her employment, Patierno was educated and trained by Hayes on the ways in which it conducts recruiting and staffing services for locum tenens (the Latin phrase used in this industry to describe temporary physician placement), as well as permanent placements.

41.     Patierno gained knowledge of trade secrets and other confidential and proprietary information of Hayes, including, but not limited to, information relating to current, former and prospective clients; strategies for competitive credentialing of physicians; methods and types of recruitment and placement services preferred by Hayes' clients; sales and marketing techniques; strategic training and coaching methods for employees; and financial information relating to the business of Hayes.

42.     By virtue of her employment with Hayes Locums, Patierno was provided the education and training to perform her role and granted access to Hayes Locums' trade secrets and confidential and proprietary information, including *client lists*, spreadsheets with input from various Hayes' employees noting physician contact information, client and physician preferences, business strategies and models, pricing information, market research and analysis, and cost control

CASE NO.: _____

strategies.  Patierno utilized the training, knowledge, and skills she received from Hayes, as well as his access to Hayes' confidential and proprietary information, to cultivate, develop and maintain relationships with Hayes' clients and physicians.

43.   Patierno's employment with Hayes was terminated in October 2020.

### Patierno's Confidentiality, Non-Competition and No-Solicitation Agreement with Hayes

44.   As an express condition of her employment with Hayes, Patierno entered into an Employment Agreement Including Confidentiality, Non-Competition and Non-Solicitation for Employees with Hayes (the "Patierno Agreement").

45.   Patierno entered into several agreements containing post-employment restrictive covenants during her employment with Hayes, but the last Employment Agreement she signed is dated December 13, 2019. A true and correct copy of the Patierno Employment Agreement is attached as Exhibit "C."

46.   The Patierno Agreement contains, *inter alia*, the following provisions which describe Patierno's obligations to protect Hayes' confidential and proprietary business  and trade secret information ("Confidential Business Information"), including client lists she compiled, supplemented, maintained and used, both during and after her employment with Hayes:

### Non-Disclosure of Confidential Business Information

(a)  . . . Employee shall not, directly or indirectly, use, permit use of, disclose, discuss, publish or disseminate in any manner any Confidential Business Information of [Hayes], except as necessary in the performance of Employee's job duties and for the sole benefit of [Hayes].  Employee will not remove any hard or electronic copies (including via email to personal email or cloud service) of Confidential Business Information from [Hayes'] premises or systems without permission and will not print hard copies of any Confidential Business Information that the Employee accesses electronically from a remote location.

CASE NO.: _____

(b) All Confidential Business Information shall be [Hayes'] sole property during and after Employee's employment.  Employee agrees to take all steps necessary, and all steps requested by [Hayes] to ensure that the Confidential Business Information is kept confidential and to comply with all applicable policies and procedures of [Hayes] regarding the use, disclosure, maintenance and security of the Confidential Business Information.

(c) Upon the termination of Employee's employment with [Hayes], regardless of the manner or reason), Employee shall immediately return to [Hayes] all Confidential Business Information, Employer assets, and other information and property obtained from or relating to [Hayes] or to which Employee had access, in good condition (normal wear and tear excepted) and shall not retain any copies thereof, whether in had copy or electronic form.

See Exh. C, ¶ 8.1.

47.     Patierno also agreed to post employment obligations prohibiting her from competing with Hayes for twelve (12) months after her employment ended:

**<u>Non-Competition Covenant</u>**.

(a) Because of [Hayes'] legitimate business interests as described in this Agreement and the good and valuable consideration offered to the Employee, Employee agrees that, during her employment and for a period of twelve (12) months immediately following the termination of Employee's Employment with [Hayes], regardless of the reason for Employee's termination, Employee will not, directly or indirectly (in any capacity, on Employee's behalf or on behalf of any other person or entity):

(i) Be employed by or serve as an officer, director, partner, shareholder, member, owner, employer, employee, consultant, agent, independent contractor . . . either directly or through a third party or employer, for a "Competitive Business" (as defined below) or any other person or business with which [Hayes] has performed services during the last twelve (12) months of Employee's employment with [Hayes].

Id., ¶ 8.2.

48.     The Patierno Agreement defines a "Competitive Business" as any business entity, unincorporated organization or personally-operated venture (as well as any parent, subsidiary, successor, or affiliate of any such of such entities) located within the United States that engages in temporary (including "locum tenens") or permanent staffing of physicians or advanced practice

practitioners, or any other type of staffing services engaged in by [Hayes] during the Employee's employment with [Hayes].

49.     Patierno further agreed that for a period of twenty-four (24) months following her last date of employment with Hayes, she would not "directly or indirectly, induce, encourage, solicit or cause or attempt to induce, encourage, solicit or cause Physicians or Clients to cease doing business with or otherwise change or diminish the Physicians' or Clients' business with [Hayes].   *Id.*, ¶ 8.3 (**Non-Solicitation of Physicians or Clients**).   Not only did Patierno agree not to solicit Hayes' facility and physician clients for a period of twenty-four (24) months, she also agreed not to "hire, attempt to hire, solicit, divert, induce or otherwise cause, attempt to cause or encourage employees or agents of [Hayes] to leave [Hayes'] employ for any reason" during the twenty-four (24) month non-solicit period.   *Id.*, ¶ 8.4 (**Non-Solicitation of Employees**).

50.     The restraints on disclosure, competition and solicitation specified in the Patierno Agreement are reasonably necessary to protect the legitimate business interests of Hayes.

51.     Specifically, Hayes' legitimate business interests include, but are not limited to, its: (1) trade secrets; (2) valuable confidential business or professional information; (3) substantial relationships with specific existing clients and healthcare professionals; (4) client and healthcare professional goodwill within Hayes' specific geographic market area; and (5) the investment in education and training of an employee.

**Simon's Employment with Hayes**

52.     In 2016, Simon began working as a Consultant at Hayes and later was promoted to Senior Consultant.

53.     As a Senior Consultant, Simon had direct and frequent contact with Hayes'
physicians and healthcare facility clients in all aspects of recruiting, staffing, credentialing,
licensing and hiring.

54.     Simon was responsible for, among other duties, maintaining Hayes' relationships
with physicians and healthcare facility clients and assuring that Hayes has a substantial database
of interested and willing physicians from which to recruit upon notification of an employment
opportunity by one of the facilities with which Hayes contracts.

55.     Throughout Simon's employment, Hayes expended substantial amounts of time,
money and effort to develop and train Simon.

56.     Throughout his employment, Simon was educated and trained by Hayes on the
ways in which it conducts recruiting and staffing services for locum tenens (the Latin phrase used
in this industry to describe temporary physician placement).

57.     Simon gained knowledge of trade secrets and other confidential and proprietary
information of Hayes, including, but not limited to, information relating to current, former and
prospective clients; strategies for competitive credentialing of physicians; methods and types of
recruitment and placement services preferred by Hayes' clients; sales and marketing techniques;
strategic training and coaching methods for employees; and financial information relating to the
business of Hayes.

58.     By virtue of his employment with Hayes Locums, Simon was provided the education and
training to perform his role and granted access to Hayes Locums' trade secrets and confidential and
proprietary information, including client lists, physician contact information, spreadsheets updated by
various Hayes employees with notes referencing client and physician preferences, business strategies and
models, pricing information, market research and analysis, and cost control strategies.  Simon utilized the

training, knowledge, and skills he received from Hayes, as well as his access to Hayes' confidential and proprietary information, to cultivate, develop and maintain relationships with Hayes' clients and physicians.

59.     Simon voluntarily resigned from Hayes on January 19, 2023. On that same day, he was provided with a separation letter reminding him of his post-employment obligations not to compete and to "immediately" return all Hayes documents and property in his possession. *See* Exhibit "D."

<b><u>Simon's Confidentiality, Non-Competition and No-Solicitation<br>Agreement with Hayes</u></b>

60.     As an express condition of his employment with Hayes, Simon entered into an Employment Agreement Including Confidentiality, Non-Competition and Non-Solicitation Provisions (the "Simon Agreement") with Hayes.

61.     Simon entered into numerous agreements containing post-employment restrictive covenants with Hayes during his employment, but the last Employment Agreement he signed is dated December 11, 2018. A true and correct copy of the Simon Agreement is attached as Exhibit "E."

62.     The Simon Agreement contains, *inter alia*, the following provisions which describe Simon's obligations to protect Hayes' confidential and proprietary business and trade secret information ("Confidential Business Information"), including client lists he compiled, supplemented, maintained and used, both during and after his employment with Hayes.

### **<u>Non-Disclosure of the Company's Confidential Business Information</u>**

(a)     At all times during and subsequent to employment with the Company, Employee shall not, directly or indirectly, permit use of, disclose, discuss, publish or disseminate in any manner, any Confidential Business Information of the Company, except as necessary in the performance of Employee's job duties and for the sole benefit of he Company. Employee will not remove any had or electronic copies (including via email to personal email or cloud service) of Confidential Business Information from the Company's premises or systems without permission and will not print

CASE NO.: _____

hard copies of any Confidential Business Information that the Employee accesses electronically from a remote location.

(b)    All Confidential Business Information shall be the Company's sole property during and after Employee's employment.  Employee agrees to take all steps necessary, and all steps requested by the Company, to ensure that the Confidential Business Information is kept confidential and to comply with all applicable policies and procedures of the Company regarding the use, disclosure, maintenance and security of the Confidential Business Information.

(c)    Upon the termination of Employee's employment with the Company (regardless of the manner or reason of termination), Employee shall immediately return to the Company all Confidential Business Information, Company assets, and other information and property obtained from or relating to the Company or to which Employee had access . . . and shall not retain any copies thereof, whether in had copy or electronic form.

*See* Exh. E, ¶ 7.1.

63.    Simon also agreed to post employment obligations prohibiting him from competing with Hayes for twelve (12) months after her employment ended:

**Non-Competition Covenant**.

(a)  Employee agrees that, during his/her employment and for a period of twelve (12) months immediately following the termination of Employee's employment with the Company, regardless of the reason for Employee's termination, Employee will not, directly or indirectly (in any capacity, on Employee's behalf or on behalf of any other person or entity):

(i)  be employed by or serve as an officer, director, partner, shareholder, member, owner, employer, employee, consultant, agent, independent contractor . . .  either directly or through a third party or employer, for a "Competitive Business" (as defined below) or any other person or business with which the Company has performed services during the last twelve (12) months of Employee's employment with the Company.

*Id.*, ¶ 7.2.

CASE NO.: _____

64.     business from or otherwise was aware of during Employee's last two (2) years of employment with the Company.  *Id.*, ¶ 7.3 (**Non-Solicitation of Physicians or Clients**).  Employee further agrees that during the twenty-four (24) month non-solicitation period, he would not induce, encourage, solicit or cause or attempt to induce, encourage, solicit or cause Physicians or Clients to cease doing business with or otherwise change or diminish the Physicians' or Clients' business with the Company.  *Id.*

65.     Not only did Simon agree not to solicit Hayes' facility and physician clients for a period of twenty-four (24) months, he also agreed not to hire, attempt to hire, solicit, divert, induce or otherwise cause, attempt to cause or encourage employees or agents of Hayes to leave Hayes' employ during the twenty-four (24) month non-solicit period.   *Id.*, ¶ 7.4 (**Non-Solicitation of Employees**).

66.     The restraints on disclosure, competition and solicitation specified in the Simon Agreement are reasonably necessary to protect the legitimate business interests of Hayes.

67.     Specifically, Hayes' legitimate business interests include, but are not limited to, its: (1) trade secrets; (2) valuable confidential business or professional information; (3) substantial relationships with specific existing clients and healthcare professionals; (4) client and healthcare professional goodwill within Hayes' specific geographic market area; and (5) the investment in education and training of an employee.

### Eichelberg's and Simon's Violations of Their Agreements and Jobot's and Patierno's Tortious Interference With The Agreements

68.     Following her termination from Hayes, during the restricted period, Patierno accepted a job with Jobot as its Senior Recruiting Manager.

CASE NO.: _____

69.     Like Hayes, Jobot is engaged in the business of temporary (locum tenens) and permanent placement of physicians and advanced practice practitioners with healthcare facilities throughout the country and is a direct competitor of Hayes.

70.     Shortly after Patierno joined Jobot, numerous Hayes employees suddenly resigned to go work for Jobot, including former Hayes Consultants Josh Arney, Anae Obee, Kenneth Clarke, Nicholas Hiemer, Scott Simon and Amy Eichelberg.

71.     On January 19, 2023, Simon voluntarily resigned from his employment with Hayes and immediately thereafter commenced employment with Jobot as a Recruiter.

72.     On March 2, 2023, Eichelberg voluntarily resigned from her employment with Hayes and immediately thereafter commenced employment with Jobot as its Principal Recruiter.

73.     Jobot and Patierno were aware of the restraints on disclosure, competition and solicitation that applied to Simon, Eichelberg and the other Hayes employees they solicited, as Patierno signed more than one restrictive covenant agreement during her employment with Hayes and because prior to filing this action, Hayes sent cease and desist letters to Simon and Eichelberg in an effort to resolve this dispute without litigation. *See* Composite Exhibit "F."

74.     Although the letters were directed solely to Simon and Eichelberg, it was Jobot's counsel that responded to each of the cease and desist letters, acknowledging the existence of the Simon and Eichelberg Agreements and the Individual Defendants' post-employment obligations to Hayes.

75.     Indeed, not only did Jobot, through counsel, acknowledge the existence of the Hayes employees' restricted covenants and agreements, they claim to unilaterally have retained forensic consultants, imaged the Hayes' employees' devices and cloud storage accounts, created spreadsheets of the information located in the forensic searches, and claim to have returned all of

the Hayes' stolen data that Simon and Eichelberg admitted to improperly retaining following their departure from Hayes, through counsel.

76.     Significantly, Patierno refused to permit Jobot's counsel to image her devices and cloud storage accounts to search for Hayes' Confidential Business Information and Trade Secrets.

77.     Also significant, the numerous client lists that Eichelberg misappropriated from Hayes conveniently were omitted from the forensic search results and returned documents that Jobot and its counsel claimed to have unilaterally performed in a good faith effort to ensure all of Plaintiff's Confidential Business Information and Trade Secrets were returned.

**Eichelberg's Violations of Her Agreement With Hayes**

78.     On March 31, 2023, Patierno took to social media to welcome Eichelberg "to the Jobot family."  *See* Exhibit "G."

79.     Eichelberg's employment with Jobot within days of her resignation constitutes a direct violation of the non-compete covenant in her Agreement.  *See* Exh. "B."

80.     Upon seeing the post and learning of Eichelberg's employment with competitor Jobot, Hayes commenced an investigation.

81.     Hayes discovered that within the days leading up to her abrupt resignation, Eichelberg utilized her Hayes email account to download from its server and then transmit Hayes' Confidential Business Information and trade secrets to her personal Gmail account.

82.     By way of example, on February 27, 2023, two (2) days before she resigned from Hayes, Eichelberg emailed to her personal Gmail account Hayes several documents and Excel Spreadsheets titled "Master List" and "Cardio – Total List."

83.     The Master Lists and Cardio-Total Lists contain confidential and proprietary information relating to current, former and prospective clients.  The Cardio-Total Lists she took

CASE NO.: _____

contain private contact information **for more than 37,000 facility clients and physician clients** (home addresses, personal cellphone numbers and personal email addresses), all compiled in an organized and distilled list by state.  The Master Lists she took contain the same information for **another 11,200 clients**, but also includes information about each physician's hospital affiliations, whether they are interested in locums or permanent placements only, when they were last contacted and by which Hayes' employee, the various states in which each physician is licensed, their areas of specialty, and notes input by various Hayes employees who were working off of these spreadsheets during Eichelberg's employment.  The notes are specific to the client's needs for placement, such as "going into IVC fellowship but may be interested in general work during fellowship" and dates of availability for placements.

84.     These lists were created, compiled and maintained by Hayes and constitute valuable non-public, confidential and trade secret information belonging to Hayes, as defined under the Agreement.

85.     After Eichelberg breached her Agreement (and company policies) by taking these lists off of Hayes' secure server and emailing them to her personal Gmail account, Eichelberg attempted to cover up her theft by first by sending them to herself as a bcc, and then by taking the extra step of deleting the emails from her work mailbox and the recycling bin on her computer.

86.     Upon information and belief, Eichelberg misappropriated additional information from Hayes which includes, but is not limited to, strategies for competitive credentialing of healthcare professionals; methods and types of recruitment and placement services preferred by Hayes' clients; sales and marketing techniques; strategic training and coaching methods for employees and leadership; and financial information relating to the business of Hayes, all of which

CASE NO.: _____

constitutes valuable non-public, confidential, and trade secret information belonging to Hayes, as defined under her Agreement.

87.     Upon information and Eichelberg has used and/or disclosed and continues to use and/or disclose the confidential, proprietary information and trade secrets she stole from Hayes in the course of her new business activities, for the benefit of herself and for Jobot.

88.     If divulged to a competitor, such as Jobot, the trade secrets could be and likely already have been used to lure away Hayes' clients, undermine Hayes' marketing efforts, and damage its competitive standing in the industry.

89.     On April 3, 2023, Hayes sent a letter to Eichelberg demanding that she comply with her Agreement and cease and desist from violating her contractual obligations.  *See* Exh "F."

90.     As of today's date, Eichelberg has not responded to the letter herself, remains employed by Jobot, and  refuses to comply with the terms of her Agreement.

### Simon's Violations of His Agreement With Hayes

91.     Prior to his January 19, 2023 resignation from Hayes, Simon was employed by Hayes as a Senior Consultant (senior recruiter) in Hayes' Urology/ENT division.  In this position, he was responsible for making placements both on the provider side and facility side of the business.

92.     Notwithstanding his execution of a non-compete agreement promising he would not work for a competitor for a period of twelve (12) months following his separation from employment, Simon commenced work with Jobot immediately in the same or nearly identical position.

CASE NO.: _____

93.     Simon's employment with Jobot immediately following his resignation from Hayes is a direct violation of his Agreement in which he promises that he would not work for a company engaged in "Physician staffing" during the restricted period.  *See* Exh. "E."

94.     Hayes also came to learn that Simon improperly took and retained Hayes' Confidential Business Information and trade secrets, in violation of the provisions in his Agreement requiring he return all Hayes' documents following his termination from employment.

95.     On March 3, 2023, Hayes sent a letter to Simon demanding that he comply with his Agreement and cease and desist from violating his contractual obligations.  *See* Simon Letter at Exhibit "F."

96.     Simon, through Jobot's counsel, claimed to have unilaterally retained an unidentified forensic consultant, who allegedly imaged his devices and cloud storage accounts, located Hayes' documents, which Jobot's lawyer identified on a spreadsheet and returned through a link.

97.     Although Simon returned a number of Hayes documents that he improperly retained post-employment, given the glaring omission of Hayes' client lists from the spreadsheet provided by Jobot's counsel on behalf of Eichelberg, and the fact that not a single document or spreadsheet from 2022 or 2023 was discovered during the "investigation" of Simon's devices and email accounts,  it is highly likely that similarly sensitive data has been retained on behalf of Simon and concealed by Jobot

98.     As of today's date, Simon has not responded to the letter himself, remains employed by Jobot, and  refuses to comply with the terms of his Agreement.

**<u>Damage to Hayes</u>**

99.     As a result of Defendants' misconduct, Hayes has suffered damages including loss

CASE NO.: _____

of confidential and proprietary trade secret information, and other damages not yet known at this time.

100.    Hayes has retained the services of the undersigned counsel to represent it in this matter, and is obligated to pay its counsel a reasonable attorney's fee.  In the event it is the prevailing party in this matter, Hayes is entitled to an award of attorney's fees as against the Individual Defendants pursuant to Fla. Stat. § 542.335(k).

101.    The subject Agreements also contain a provision regarding remedies agreed upon by the parties in the event of any breach of the Agreement. The Individual Defendants "agree[d] that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives." As such, the Individual Defendants agreed that Hayes "may, in addition to the other remedies which may be available to it, file a suit in equity to enjoin [them] from violation and breach of this Agreement." *See* Exhs. B, C, E.

## COUNT I – BREACH OF CONTRACT
### (Against Eichelberg and Simon)

102.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1 through 101 of this Verified Complaint, as though fully set forth herein.

103.    Eichelberg and Simon entered into  enforceable Employment Agreements, as set forth above, wherein they agreed, among other things, (1) not to employed by or work on behalf of any business in competition with Hayes for a period of twelve (12) months following her separation from employment with Hayes; (2) not to retain, use or disclose Hayes' Confidential Business Information and trade secrets and to return any to which they was given access  upon their termination; and (3) not to solicit clients or employees of Hayes for a period of twenty-four months. *See* Exhs. B, E.

CASE NO.: _____

104. Eichelberg and Simon each breached their respective Employment Agreements, by, *inter alia*, (1) accepting employment with a direct competitor of Hayes – Jobot -  within days of their voluntary resignations from Hayes (if not before); (2) taking, retaining and disclosing Hayes Confidential Business information and trade secrets days prior to resigning and then attempting to cover up the theft; and (3) upon information and belief, soliciting employees and clients of Hayes to cease working with Hayes and instead to work with them at Jobot within the restricted period.

105. Hayes is entitled to specific performance of the Eichelberg Agreement and Simon Agreement in the form of the immediate return of all copies of Hayes' Confidential Business Information and trade secrets and independent verification that no such property remains in their or Jobot's possession.

106. As a direct and proximate result of Eichelberg's and Simon's respective breaches of their Agreements, Hayes has suffered and will continue to suffer damages.

107. Hayes does not have an adequate remedy at law for the harm and damage which Defendants' breaches of their Agreements have caused.

108. Hayes has suffered economic losses as a result of Eichelberg's and Simon's respective breaches of their Agreements.

WHEREFORE, Hayes demands the following:

(a) injunctive relief enforcing the Eichelberg Agreement and the Simon Agreement and enjoining all conduct in violation thereof;

(b) injunctive relief preventing Eichelberg and Simon, and any individuals and entities with whom they are associated, including Patierno and Jobot, from utilizing Hayes' Confidential Business Information and trade secrets, and requiring the immediate return of all

CASE NO.: _____

Confidential Business Information and trade secrets of Hayes in any of their possession, custody, or control;

(c)     injunctive relief prohibiting Eichelberg and Simon from continuing to work for Jobot and any other healthcare staffing company that competes with Hayes for the entirety of the twelve (12) month restricted period commencing on the date of the entry of the order, per the tolling provisions in their Agreements;

(d)     actual damages flowing from the breaches;

(e)     attorneys' fees and costs incurred in bringing this action to enforce the Individual Defendants' Employment Agreements, pursuant to applicable statutes including, but not limited to, Fla. Stat. § 542.335; and

(f)     all other remedies available at law or in equity as this Court deems just and appropriate.

**COUNT II- MISAPPROPRIATION OF TRADE SECRETS UNDER
THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)
(Against Eichelberg and Simon)**

109.     Hayes repeats and reasserts each and every allegation contained in paragraphs 1-101 of this Verified Complaint, as though fully set forth herein.

110.     The purpose of the Defend Trade Secrets Act ("DTSA"), codified at 18 U.S.C. §§ 1831-1839, is to "equip companies with the ... tools they need to protect their proprietary information ... [so that U. S. companies will] continue to lead the world in creating new and innovative products, technologies, and services." H.R. Rep. No. 114-529, at 6 (2016).

111.     Under 18 U.S.C. § 1836(b), an owner of a trade secret that is misappropriated may bring a civil action if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

112.    Per 18 U.S.C. § 1836(b)(2), the Court may grant an *ex parte* application for an order providing for the seizure of property necessary to prevent the propagation or dissemination of the Proprietary Files.

113.    Per 18 U.S.C. § 1836(b)(3), the Court may grant remedies of (a) an injunction to prevent actual or threatened misappropriation, (b) an award of damages, (c) an award of exemplary damages if the trade secret was willfully and maliciously misappropriated, and (d) an award of attorneys' fees if the trade secret was willfully and maliciously misappropriated.

114.    The trade secrets at issue are Hayes' Confidential Business Information (hereafter "Confidential Information and Trade Secrets").

115.    The Confidential Information and Trade Secrets is related to services used in, or intended for use in, interstate or foreign commerce.

116.    Hayes is the "owner" of the Confidential Information and Trade Secrets stolen by Eichelberg and Simon under 18 U.S.C. § 1839(4) because it is the entity in which rightful legal or equitable title to, or license in, the Confidential Information and Trade Secrets is reposed.

117.    The Confidential Information and Trade Secrets constitute a "trade secret" under 18 U.S.C. § 1839(3) because they are a form of financial, business, scientific, technical, economic, or engineering information; Hayes has taken reasonable measures to keep such information secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

118.    The Confidential Information and Trade Secrets were misappropriated by Eichelberg and Simon under 18 U.S.C. § 1839(5)(A) because they acquired them through improper means, namely outright and flagrant theft and breach of their duties to maintain their secrecy.

CASE NO.: _____

119.     The Confidential Information and Trade Secrets also were misappropriated by Eichelberg and Simon under 18 U.S.C. § 1839(5)(B) because they used improper means to acquire Confidential Information and Trade Secrets (namely theft and breach of their duties to maintain their secrecy).

120.     Hayes has suffered substantial economic loss as a direct and proximate result of the Eichelberg's and Simon's violations of the DTSA alleged herein. Hayes is entitled to an award of actual damages from Eichelberg and Simon, plus exemplary damages of up to two times actual damages, plus attorney's fees and costs.

121.     Eichelberg and Simon have been unjustly enriched by profiting from their misappropriation, use, and/or disclosure of Hayes' Confidential Information and Trade Secrets. Hayes is entitled to imposition of a constructive trust requiring Eichelberg and Simon to disgorge to Hayes any amounts they have received or benefitted through their violations of the DTSA.

122.     For all these reasons, Hayes is entitled to bring a civil action under DTSA for misappropriation of trade secrets.

WHEREFORE, Hayes demands the following:

(a)     an order to seize Eichelberg's and Simon's personal and Jobot email accounts, cloud storage accounts, smart phones, tablets, IPads, desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like;

(b)     injunctive relief preventing Eichelberg and Simon and any person or entity to whom they disclosed the Confidential Information and Trade Secrets (including Patierno and Jobot) from utilizing Hayes' Confidential Information and Trade Secrets, and requiring the immediate return of all

27

CASE NO.: _____

Confidential Information and Trade Secrets of Hayes in their possession, custody, or control;

(c)    an order requiring independent verification that none of Hayes' Confidential Information and Trade Secrets remain in the possession, custody, or control of Eichelberg and Simon or any individuals and entities with which they are associated, including Jobot and Patierno;

(d)    actual damages flowing from Eichelberg's and Simon's misappropriation of Hayes' Confidential Information and Trade Secrets;

(e)    an order requiring Eichelberg and Simon to return the Hayes Confidential Information and Trade Secrets and other documents and materials they took as well as to destroy all remaining information regarding Hayes and its clients in their possession, custody, or control;

(f)    an order requiring Eichelberg and Simon to make their personal email accounts, cloud storage accounts and hard drives available for forensic inspection and requiring all Individual Defendants to make their Jobot email accounts available for forensic inspection to ensure all Hayes' information was deleted;

(g)    attorneys' fees and costs incurred by Hayes in bringing this action; and

(h)    all other remedies available at law or in equity as this Court deems just and appropriate.

## COUNT III– MISAPPROPRIATION OF TRADE SECRETS/VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (Fla. Stat. § 688.001, *et seq.*) (Against Eichelberg and Simon)

123.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1-

101 of this Verified Complaint, as though fully set forth herein.

124.    Hayes possesses Trade Secrets, which include non-public information relating to current, former, and prospective clients; methods and types of services preferred by Hayes' clients; sales and marketing techniques; negotiated contract terms and pricing, and financial information relating to Hayes' business.  These Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public and not being readily ascertainable by proper means by the public or any other person who may obtain commercial or economic value from the disclosure of such information.

125.    Hayes made reasonable efforts under the circumstances to maintain the secrecy of such Confidential Information and Trade Secrets by taking steps to protect it.  These efforts include, but are not limited to, entering into the Agreements with the Individual Defendants, whereby they acknowledged the confidential and trade secret nature of this information and agreed not to use or disclose it, either during or upon termination of employment, and monitoring access to and efforts to export Hayes' Confidential Information and Trade Secrets.  Additionally, Hayes has an IT department and software programs to block cloud uploads of its information and to prohibit authorized users from sharing files from its OneDrive/Sharepoint to the web. For extra security, all of Hayes' data, Confidential Information and Trade Secrets resides in the cloud and is monitored by a Cloud Access Security Broker (Microsoft Defender for Cloud Apps) and its IT department monitors traffic through firewalls and Secure Web Getaways for remote users.  Finally, Hayes takes additional measures to protect its Confidential Information and Trade Secrets through promulgation of confidentiality policies and password protection on its database, email systems and SharePoint.

126.    Eichelberg and Simon intentionally misappropriated Hayes' Trade Secrets without

CASE NO.: _____

the knowledge or consent of Hayes and with the purpose of utilizing them for their own benefit and/or the benefit of their new employer, Jobot.

127.    Eichelberg and Simon knew that Hayes' Trade Secrets were the property of Hayes and that such property constituted confidential trade secrets, that they had a duty to Hayes and a contractual obligation to maintain their secrecy, and that they were not permitted to remove, utilize, or disclose the Trade Secrets.  Their actions, therefore, were willful and malicious.

128.    Upon information and belief, Eichelberg and Simon have utilized Hayes' Trade Secrets for their personal gain and/or for the benefit of Jobot.

129.    The actions of Eichelberg and Simon constitute misappropriation of Hayes' Trade Secrets under Section 688.002 of the Florida Statutes.

130.    Eichelberg and Simon, and Jobot, have been unjustly enriched by their unlawful use of Hayes' Trade Secrets, and Hayes is entitled to damages, including but not limited to loss of profits and disgorgement and the immediate return of all Confidential Information and Trade Secrets of Hayes in the any of the Defendants' possession, custody, or control.

131.    Eichelberg's and Simon's actions were taken in willful, wanton, and/or reckless disregard of Hayes' rights and warrant the imposition of exemplary damages.

WHEREFORE, Hayes demands the following:

(a)    injunctive relief preventing Eichelberg and Simon from utilizing Hayes' Confidential Information and Trade Secrets, and requiring the immediate return of all Hayes' Confidential Information and Trade Secrets in their possession, custody, or control, including those they have residing on their Jobot devices and email accounts;

(b)    injunctive relief in the form of independent verification that none of Hayes'

CASE NO.: _____

Confidential Information and Trade Secrets remains in the possession, custody, or control of Eichelberg and Simon or any individuals and entities with which they are associated, including Jobot and Patierno;

(c)    actual damages flowing from Eichelberg's and Simon's misappropriation of Hayes' Confidential Information and Trade Secrets;

(d)    an order requiring Eichelberg and Simon to return the Hayes Confidential Information and Trade Secrets and any other documents and materials they took, as well as destroy all remaining information regarding Hayes and its clients in their possession, custody, or control;

(e)    an order requiring Eichelberg and Simon to make their personal and Jobot email accounts, cloud storage accounts and hard drives available for forensic inspection to ensure all Hayes information was deleted;

(f)    attorneys' fees and costs incurred by Hayes in bringing this action; and

(g)    all other remedies available at law or in equity as this Court deems just and appropriate.

### COUNT IV – CONVERSION
### (Against Eichelberg and Simon)

132.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1 through 101 of this Verified Complaint, as though fully set forth herein.

133.    Eichelberg and Simon surreptitiously took Hayes' Confidential Information and Trade Secrets without Hayes' knowledge or consent and, upon information and belief, provided the Confidential Information and Trade Secrets to Jobot and Patierno.

134.    In so doing, Eichelberg and Simon improperly and without authorization exercised dominion and control over Hayes' Confidential Information and Trade Secrets.

135.    As a direct and proximate result of Eichelberg's and Simon's conduct, Hayes has suffered and will continue to suffer damages in an amount to be determined at trial.

136.    Eichelberg's and Simon's actions were willful and intentional, entitling Hayes to punitive damages.

137.    Hayes has been required to retain legal counsel to prosecute this action and is entitled to recover their reasonable attorneys' fees and costs.

WHEREFORE, Hayes demands the following:

(a)    injunctive relief preventing Eichelberg, Simon, Patierno and Jobot from utilizing Hayes' Confidential Information and Trade Secrets, and requiring the immediate return of all Hayes' Confidential Information and Trade Secrets  in Eichelberg's and Simon's possession, custody, and/or control;

(b)    attorneys' fees and costs incurred in bringing this action;

(c)    actual damages flowing from the conversion; and

(d)    all other remedies available at law or in equity as this Court deems just and appropriate.

## <u>COUNT V – BREACH OF FIDUCIARY DUTY</u><br><u>(Against Individual Defendants)</u>

138.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1-101 of this Complaint, as though fully set forth herein.

139.    Hayes had significant confidence and trust in Eichelberg, Partierno and Simon, which led to their promotions to Senior Consultants.

140.    In light of their senior positions and duties and the trust and confidence Hayes had reposed in them, Individual Defendants had a fiduciary duty during their employment to, *inter alia,* act in the best interests of Hayes at all times, to safeguard and protect Hayes' Confidential

Information and Trade Secrets, to not use and/or retain the Hayes' Confidential Information and Trade Secrets or any materials acquired or developed by them during the course of their employment for their personal benefit and/or the benefit of Hayes' competitors, like Jobot, and to not breach their agreements or to tortiously interfere with other agreements by soliciting Hayes' employees to resign and join Jobot.

141.    This fiduciary duty continued post-employment, in that the Individual Defendants owed Hayes a duty to, *inter alia*, not use or disclose to Hayes' competitors any information, knowledge, or materials acquired or developed by them during the course of their employment for their own benefit and/or the benefit of Hayes' competitors, like Jobot and not to use information they acquired at Hayes to tortiously interfere with Hayes' agreements and solicit its employees to join Jobot.

142.    By virtue of, *inter alia*, taking, retaining, using and/or disclosing Hayes' Confidential Information and Trade Secrets following their terminations from Hayes (Simon's and Eichelberg's being voluntary), and by tortiously interfering with Hayes' agreements with its employees for their personal benefit, for the benefit of a competitor and/or to disadvantage Hayes, Individual Defendants breached their fiduciary duty to Hayes.

143.    Additionally, by virtue of, *inter alia*, taking with them Hayes' Confidential Information and Trade Secrets *during their employment*, before notifying Hayes of their intent to resign, to enable them to induce Hayes' clients to cease doing business with Hayes and instead to do business with them at Jobot, Eichelberg and Simon breached their fiduciary duty to Hayes.

144.    As a direct and proximate result of Individual Defendants' breach of their fiduciary duties, Hayes has suffered and will continue to suffer damages in an amount to be determined at trial.

CASE NO.: _____

145.    The Individual Defendants' actions were willful and intentional, entitling Hayes to punitive damages.

WHEREFORE, Hayes demands the following:

(a)    injunctive relief preventing the Individual Defendants from utilizing Hayes' Confidential Information and Trade Secrets, and requiring the immediate return of all Hayes' Confidential Information and Trade Secrets in their possession, custody, or control;

(b)    actual damages flowing from the Individual Defendants' breach of fiduciary duty; and

(c)    all other remedies available at law or in equity as this Court deems just and appropriate.

## COUNT VI – STATUTORY CLAIM UNDER FLORIDA'S COMPUTER ABUSE AND DATA RECOVERY ACT (CADRA) (against Eichelberg and Simon)

146.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1-96 of this Verified Complaint, as though fully set forth herein.

147.    Eichelberg and Simon knowingly, and with intent to cause harm to Hayes, took Hayes' Confidential Information and Trade Secrets relating to, *inter alia*, to current, former and prospective clients and physicians, their personal, private contact information, credentialing information, methods and types of recruitment and placement services they preferred; notes created by *other* Hayes' employees on the spreadsheets of client lists she took, who also were working to place these same clients in temporary or permanent positions; and other Confidential Information and Trade Secrets belonging to Hayes.

CASE NO.: _____

148.    Eichelberg and Simon took this information from one or more protected servers at Hayes, after Hayes put reasonable measures in place to restrict access to its computer data.

149.    In improperly sending Hayes Confidential Information and Trade Secrets to their personal email accounts and retaining Hayes' data, prior to their voluntary resignations so they could use it to their benefit at their new job with competitor Jobot, Eichelberg and Simon acted improperly and without authorization.

150.    Specifically, Eichelberg and Simon were granted access to Hayes' Confidential Information and Trade Secrets solely for use for Hayes' business and solely while using the secure platforms provided by Hayes.  Eichelberg's and Simon's access of the Confidential Information and Trade Secrets in order to take them for their personal use at Hayes' competitor Jobot was outside of those bounds and was not authorized.

151.    As a direct and proximate result of Eichelberg's and Simon's conduct, Hayes has suffered and will continue to suffer damages in an amount to be determined at trial.

152.    Eichelberg's and Simon's actions were willful and intentional, entitling Hayes to punitive damages upon appropriate motion.

153.    CADRA permits Hayes to recover damages and obtain other remedies for Eichelberg's and Simon's improper conduct.

154.    Hayes has been required to retain an attorney to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs.

WHEREFORE, Hayes demands the following:

(a)     injunctive relief preventing Eichelberg and Simon and any individuals and entities with which they are associated (such as Jobot and Patierno) from utilizing Hayes' Confidential Information and Trade Secrets, and requiring

CASE NO.: _____

the immediate return of all Confidential Information and Trade Secrets of

Hayes Locums in any of their possessions, custody, or control;

(b)    injunctive relief in the form of independent verification that none of Hayes'

Confidential Information or Trade Secrets remains in the possession,

custody, or control of Eichelberg, Simon and/or any individuals and entities

with which they are associated (including Jobot and Patierno);

(c)    actual damages flowing from Eichelberg's and Simon's violation of

CADRA; and

(d)    all other remedies available at law or in equity as this Court deems just and

appropriate.

### COUNT VII –TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
### (against Jobot and Patierno)

155.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1-101 of this Verified Complaint, as though fully set forth herein.

156.    Hayes has valid, enforceable and advantageous contractual relationships with Eichelberg, Patierno and Simon, and the Agreements these Individual Defendants entered into with Hayes contain restrictive covenants, including non-competition, non-solicitation and confidentiality provisions.  *See* Exhs. B, C, E.

157.    Patierno, who is well aware of these restrictive covenants by virtue of her signing several of them throughout her employment with Hayes, nevertheless actively solicited and continues to solicit a number of Hayes' employees with full knowledge of their Agreements not to work for a competitor for a period of twelve (12) months following their separation from Hayes.

CASE NO.: _____

158.     Jobot, moreover, is employing Eichelberg, Patierno and Simon in violation of the Agreements (specifically the Eichelberg Agreement, Patierno Agreement and Simon Agreement), in addition to a number of other former Hayes employees all within the restricted period.

159.     Jobot knows that Eichelberg and Simon (and others) are violating their Agreements with Hayes by working for it, and that Hayes has an advantageous contractual relationship with each of them.  Jobot is fully aware of Eichelberg's and Simon's (and others') Agreements, which prohibit them from competing with Hayes by, *inter alia,* accepting employment with direct competitors, such as Jobot, and disclosing Hayes' Confidential Information and Trade Secrets. Jobot is benefitting from Eichelberg's and Simon's actions and incentivizing them to do so through compensation and other benefits.

160.     Jobot intentionally and unjustifiably interfered with Hayes' contractual relationships with Eichelberg, Patierno and Simon by inducing them to and/or assisting them in breaching their restrictive covenants by leaving Hayes, commencing work at Jobot, Hayes' direct competitor, and by having them bring with them and utilize Hayes' Confidential Information and Trade Secrets for Jobot's benefit.

161.     This is not the first time Jobot has interfered with Hayes' contractual relationships. In the last 24 months, Jobot has poached, induced and enabled numerous Hayes employees to breach their restrictive covenant agreements by employing them during the restricted period and encouraging them to take with them Confidential Information and Trade Secrets belonging to Hayes for their use at Jobot through significant financial compensation and benefits offerings.

162.     Hayes has suffered damages as a result of Jobot's and Patierno's unjustified interference.

WHEREFORE, Hayes demands the following:

CASE NO.: _____

(a)     injunctive relief preventing Jobot and Patierno from continuing to interfere with Hayes' contractual relationships;

(b)     actual damages flowing from the tortious interference; and

(c)     all other remedies available at law or in equity as this Court deems just and appropriate.

**COUNT VIII – INJUNCTIVE RELIEF**
**(against all Defendants)**

163.    Hayes repeats and reasserts each and every allegation contained in paragraphs 1-101 of this Verified Complaint, as though fully set forth herein.

164.    If not enjoined, Eichelberg, Patierno, Simon will continue to violate their restrictive covenant agreements, and all of the Defendants, including Jobot, will continue to use and disclose Hayes' Confidential Information and Trade Secrets they unlawfully obtained to undermine Hayes in the industry, to cause Hayes to sustain reputational harm, and to cause Hayes the ongoing loss of its Trade Secrets, which will result in additional irreparable harm for which monetary damages would be an inadequate remedy.

165.    Accordingly, Hayes seeks an order enjoining Eichelberg, Patierno, and Simon from continuing to violate the restrictive covenants in their Agreements and enjoining all of the Defendants, including Jobot, from continuing to use, transfer and/or disclose Hayes' Confidential Information and Trade Secrets, which the improperly obtained and/or retained.

166.    Finally, Hayes seeks an order enjoining Patierno and Jobot from continuing to tortiously interfere with its contractual relationships with its employees.

167.    Hayes also seeks an order requiring Defendants to immediately return to Hayes all of Hayes Confidential Information and Trade Secrets and other documents and property in their possession, custody and/or control.

CASE NO.: _____

WHEREFORE, Hayes demands the following:

(a)     injunctive relief enjoining Eichelberg, Patierno and Simon from directly or indirectly transferring, using, or disclosing Hayes' Confidential Information and Trade Secrets to Jobot and any other third parties;

(b)     injunctive relief enjoining Eichelberg and Simon from violating their non-competiton and non-solicitation agreements;

(c)     injunctive relief enjoining Jobot from using Hayes' Confidential Information and Trade Secrets it has obtained through its employment of the Individual Defendants;

(d)     injunctive relief enjoining Jobot and Patierno from tortiously interfering with Hayes' contracts with its employees; and

(e)     all other remedies available at law or in equity as this Court deems just and appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Hayes respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A.     Injunctive relief (including a preliminary injunction and permanent injunction) against Eichelberg, Patierno, Simon and Jobot (i) enjoining them from retaining and/or using Hayes Confidential Information and Trade Secrets that they took and/or improperly obtained; (ii) directing them to return to Hayes the Confidential Information and Trade Secrets in whatever form in which they exist in Defendants' possession; (ii) enjoining the transfer of the Confidential Information and Trade Secrets to any third party; (iii) requiring Defendants to identify all copies and all transfers of the Confidential Information and Trade Secrets, including the identity of any third party receiving or obtaining the Confidential Information and Trade Secrets or a copy thereof; (iv) prohibiting Defendants from misappropriating, using, or disclosing Hayes Locums' Confidential Information and Trade Secrets in their possession; and (v) enjoining Eichelberg and Simon from violating the restrictive covenants in their Agreements;

B.    An award of monetary damages in an amount to be determined at trial including, but not limited to, the disgorgement of all profits Defendants were and/or will be paid by Hayes' clients as a result of their misconduct;

C.    An award of exemplary damages.

D.    An award of attorneys' fees.

E.    An award of Hayes' costs and expenses of this suit.

F.    Such other and further relief that the Court deems just and proper.

Dated: April 21, 2023

                        Respectfully submitted,

                        By: *s/ Jennifer A. Schwartz*
                          Jennifer A. Schwartz, Esq.
                          Florida Bar No. 502431
                          E-mail: *jennifer.schwartz@jacksonlewis.com*
                          Ryan B. Weiss, Esq.
                          Florida Bar No. 114479
                          E-mail: *ryan.weiss@jacksonlewis.com*
                          JACKSON LEWIS P.C.
                          One Biscayne Tower, Suite 2500
                          Two South Biscayne Boulevard
                          Miami, Florida  33131
                          Telephone:  (305) 577-7600
                          Facsimile:  (305) 373-446
                          *Counsel for the Plaintiff,*
                          *Hayes Medical Staffing, LLC*

## **VERIFICATION**

Purusant to 28 U.S. Code § 1746, I declare under penalties of perjury that I am the Chief People Officer of Hayes Medical Staffing, LLC that I have read the foregoing Verified Complaint, and that the facts stated in it are true and correct to the best of my knowledge and belief.

                                                          _____
                                          CHARLES WHITE WILDRICK II, CPO